Miss Hester you're no stranger to this courtroom. We're ready whenever you are. Thank you May it please the court and Hester representing Mario Taylor Law enforcement officers violated Mario Taylor's Fourth Amendment rights when they seized him without any reasonable suspicion Under United States vs. Jones officers Skipper and Watson seized Taylor before Skipper asked for Taylor's name This case is like Jones and three key respects First the encounter began with Taylor knowing the police officers were following him So it lacked the traditional hallmark of a consensual counter, which is the routine approach of a police officer but second two uniformed officers closely followed the car from a public road onto private property and Then positioned themselves so that the car couldn't leave and in considering this particular factor I invite the court to look at the photos and the joint appendix there on page 48 and then there are two more on 699 and 700 The car was parked on a concrete driveway That was fairly close to the street With the front of the car close to the building and the only way that the driver could leave was to back out But he couldn't back out because while Skipper was talking to the men he began on the driver's side But then before he talked to Mario Taylor and got his identifying information He moved to the other side Well during this time Watson was providing cover off the corner of the car on he said on the sidewalk Which is about five or six feet away from the car and as Skipper moved from one side of the car to the other Watson also was moving from one side of the car to the other so during this time Any person in the driver's position wouldn't have felt free to back out of the driveway because there were officers right next to the car and moving back and forth behind the car No reasonable person would back out of that driveway while the police officers are moving back and forth behind the car particularly When they know that they've been targeted for questioning The third factor is that the officers didn't ask if they could speak with Taylor and his companions instead Skipper approached the car and immediately Began questioning the driver about their activities and then began asking them for their identifying information So the totality of the circumstances here suggested to a reasonable person in Taylor's position that he was not that the officers Suspected him of illegal activity and in combination with the officers positions around the car This conveyed that Taylor was the target of a criminal investigation and was not free to leave Furthermore the seizure wasn't justified by reasonable suspicion The facts demonstrate the seizure was based on nothing more than an inadequate hunch The district court relied on four factors that under the totality of the circumstances do not create reasonable suspicion and two of those factors the governor The government doesn't even defend and one of those is that the officers were in the neighborhood in response to a call concerning a burglary But the officers didn't provide any testimony about a description of the suspect the source of their information The location of the burglary or even the time when the burglary occurred is your position that there was a seizure dependent on? Acceptance of the fact that the officer in the back of the car is blocking. I Think that's a critical critical factor that the person that the driver would not have been able to back out of that Position and leave and it's very similar to Jones, you know in Jones The actually the car was not parked behind the police car was not parked behind the car in Jones It was part and ahead of the car there was a one-way driveway with parking places on one side and the police car pulled ahead of Jones's car there but because of the way that the driveway was situated the only way that Jones could get out was to back out through the One-way driveway and this court said that in the course of the district court making its finding that there was a Terry stop Did it make a finding of fact that the car was prevented from backing out because of the position of the motorcycle? The court the court did not make any findings of fact with respect to the Terry stop And I'm not saying that the motorcycles were in the way because they weren't they were over to the side What I'm saying is that the officers Persons were in the way because they were on they were next to the car and also moving back and forth behind the car and the timing is pretty critical to because Skipper was talking to the driver and the other passenger their testimony was that one of the officers would be Questioning the driver or one of the passengers and depending on which side of the car he was on The other officer moved to the other side, that's right That's what they testified to in the timing. Like I said the timing take the facts and the flight most favorable to the government Wouldn't that indicate that there wasn't anybody behind the car? No, because even in the light most favorable to the government both officers testified that the covering officer who was Watson was moving as Skipper moved it was moving behind the car Well, I obviously had to do that to get from one side to the other but It doesn't sound like the evidence was that they were positioned stationary behind the vehicle so that One officer was on either side of the car. It looks like the car would have been able to back out I'm not saying that they was that the officer was positioned directly behind the car But what I'm saying and the timing is critical because skipper talks to The driver first and ask him what he's doing and then to get Taylor's identifying information Which is the critical critical piece of information here because they use that to find his DNA swab from a prior arrest So right before he gets that information, that's when the officers are moving back and forth But I think you can't look at that in isolation either you have to look at it in the totality of the Circumstances of what was happening at the time and that was that these officers Had followed had had seen the men They obviously saw each other and then followed them watch them for a while and then approach the car and that was a key Factor in Jones as well that this wasn't some routine encounter that the defendant knew that the officers were targeting them for an investigation So I think you have to consider that in the totality of the circumstances as well It wasn't just that the officers were moving back and forth. It's that in combination with the fact that these men were targeted for an investigation So when you say targeted for an investigation Does that go to some? Specific criminal event or do you mean by that that they had been stopped and they were being asked questions. I'm not sure which What that phrase means is you use it? Well, they they were targeted for investigation because these officers thought there was something fishy going on, but they didn't have reasonable suspicion They were fishing for information to find out if the men had done something wrong And As I said the seizure wasn't justified by reasonable suspicion because these four factors that the district court gave In their totality don't support reasonable suspicion at the first of them being that there had been a burglary in the area Well, it turns out that the burglary suspect was on foot The burglary had taken place a half mile away in the opposite direction from which these men were traveling So the officers couldn't have reasonably suspected that Taylor and his companions committed the burglary simply because they were in the area the second factor that the district court Considered that also the government doesn't argue is that the car parked in front in front of a duplex? Where no other cars were located and occupants of the car didn't leave after they got no answer at the door The police gave gave no explanation for why this was suspicious and the officers didn't even give them in time to leave They testified both of them that they watched them for about 45 seconds, and then they approached the car and began asking questions The government relies on what it calls evasive conduct but the government acknowledges that the court must consider the totality of the Circumstances and in totality the behavior of Taylor and his companions Was not evasive because any suspicion of evasion is completely dispelled By the fact that after passing the police officers Taylor and his companions Parked their car right next to the street a couple of blocks away and went about their business While the officers watched them and again I think that the photos of the area are helpful because that shows how close the car was to the street Nobody would pull off right next to the street two blocks from seeing after seeing the police In an attempt to avoid them that just doesn't make any sense Finally under the totality of the circumstances the open car window on a cold day doesn't give rise to reasonable suspicion because again officers You're a veteran as is miss race, I don't feel too bad about doing it The the district judge thought this was a Terry stop. Yes, so what does that give you? If you accept that's accurate that involves factual findings as well as conclusions in law What does that give you well, unfortunately given is something that the analysis would start from Unfortunately, the the district court didn't make any factual findings So I think that the court's review is still de novo even from that particular determination But the court can take it into consideration that the district court did think that there was a stop in this What view of the evidence with the district judge have had to take in order to reach that conclusion? Would he have had to take I Think even in the light most favorable. I mean, I think even in the light most favorable to the government for the reasons I explained Still that the evidence Shows that there was a seizure because of the way that the officers admittedly were positioned around the car and the way that they targeted the car for investigation So the open car window in a cold day Because I think As I hear your argument it seems to me the end result will be that you are looking at each of the individual factors of the events and The of course the standard is totality of the circumstances and I'm trying to think about other cases Because I think for you to get to where you want to go You need to point us to a case that you think is most analogous To this type of situation in which we have held as you would like what a Supreme Court has held Because I think when you when you when you look at all of the facts here. Yeah rolling the window down. It's not a big deal fact that they guys Investigating the burglary and the guy's supposed to be on foot Yeah, that may have something to do with these guys are riding around the car and you look at what they are doing and you put It all together Then that sort of neatly fits into Totality of the circumstances no either one of these would not work, but when we look at all this there There may be something there, and what case do you think would be most analogous to your position you maintain? Well, I still think Jones is probably the most analogous position Case I don't think there's a case on all fours. I mean every time the court has to do this it has to Analyze each factor separately and then put them all together I think Massenburg is probably a good example of that so as I cited in the brief You know there are different aspects of this case that line up with other cases, but I can't cite a particular case That has all of these factors together Right, but I'm saying the case that's most analogous in terms of similar type Circumstances of which you have a series of events that occur in the fashion They have here and the end result for this hill Those that case is one I mean, I think Massenburg is similar because you've got the looking away and the person kind of moving away from the other suspects I Think that Jones is similar because there you have the police seeing a car That's got people in it that don't seem like they belong in the area but this case is different in another way from that because this is broad daylight and that was at night in a high-crime area and This wasn't a high-crime area But I think you have to look at I mean what are the things that happened here, okay? They They looked away from the officers. They accelerated away one of the officers testified. I think I've got the right case Testified in this case that when they saw the individuals looking away Because of the position of the car it was a traffic hazard because they should have been looking the other way for traffic and they thought it was odd because they weren't looking for where the The oncoming traffic would be coming from there wasn't their testimony to that effect There was but that just doesn't even make any sense the officers didn't agree about how the car was situated when they saw and that officer said the car was stopped at a stop sign and It should have been looking left to see traffic, but it was stopped at the stop sign It didn't pull out it waited for the officers to go past before it pulled out So it just doesn't make any sense that he would be doing something dangerous by not looking He'd either already looked or he was positive stop sign for a minute And then and then what argument for the district court judge? but Since we're here, wouldn't we have to? Conclude that in the light most favorable to the government that the district court judge credited that testimony from the police officer Well, you know Maybe but then you have to look at the totality of the circumstances and what they did next they drove two blocks And then they pulled over into a driveway that's right next to the street and went up to somebody's house So how is that evasive? I mean the looking away from the officers is relevant only in terms of Evasion this court has repeatedly said that that could be interpreted either way so that it's only In connection with other circumstances that it can become suspicious So I really think you have to look at you know you've got the looking away You've got the accelerating stopping at in a location. That's right next to the road While the police are looking at him, and then you've got two windows down not just the passenger window But you've got the driver's window down, too So how does that how does that give rise to any suspicion that something's been thrown out of the car? They didn't know at the time that there was any contraband around How is that suspicious that two windows of the car are rolled down and officers were consistent and saying the driver's window was also down I? See I run out of time, and I thank you May it please the court a few points responsive to miss Hester's argument first of all the reason that And on the it was suspicious that they pulled off and that the location does not help The defendant in this case is because the window was rolled down and presumably the contraband had been ditched So the fact that they pulled over right there Actually added to or it certainly didn't detract from the totality the circumstances that suggested reasonable suspicion I definitely want to address the seizure issue with respect to Jones the reason that that case is distinguishable is because the the police car was parked in such a way that while it wasn't immediately behind the Vehicle it was blocking the exit because it was a one-way street and the court in That was particularly critical here. We have both officers testifying that never at no time was an officer or a car stationary be in such a way that these folks couldn't leave and Officer Watson testified that within about two minutes of the beginning of the encounter he had gone down the street to find the gun because there was a report of a gun and that was within two minutes and That's on J a joint appendix 456 in terms of the timing of that So what we have is we have the off only two officers One of them is behind but he testifies that he was about five to six feet away From the car at any given point and off to the side back and off to the side There were they didn't display weapons Their tone was cordial actually only officer Sprinkley ever Interacted with these folks and there was no evidence that they went back and forth numerous times They encountered they talked to the driver They went around because the driver agreed to consent to the search and he spoke with The passengers and said, you know, you need to get out because the driver just consented to a search. Will you get out? They agreed they agree voluntarily to the frisk and then the encounter was over as soon as that frisk occurred Officer Sprinkle testified that he is an officer. I'm getting that name wrong. I'm sorry He testified that they went he went off and stood by the motorcycles and still they did not leave there's no indication that those gentlemen ever intended to leave once they had parked the car and And ditched the gun So on the seizure issue the reason that miss Hester Jones is her best case, but Jones is fundamentally distinguishable In terms of the reasonable suspicion it is the totality of the circumstances and In addition to the fact that they were looking down or away it's distinguishable from Massenburg because they were in a traffic context and Officer Watson testified that because of where they were located it just it was odd He also testified by the way that both of the officers Thought a skipper. That's the name both of the officers Noticed immediately that something was strange. They were independently riding their motorcycles They looked at each other like that was odd and they decided to to follow and at least check it out then they drove past and In the defendant's brief She suggests that miss Hester suggests that the officers did not notice the window down until they were beside the car But that's not what the evidence was in the light most favorable to the government officer skipper testified that he noticed After they pulled past the car he noticed that the window was down So before they ever approached they had the window down in the handout They had the officers Speeding both officers testified that the car was speeding They both had were aware that there was a break-in and and judge Cogburn in the district court Found that the fact that the break-in suspect was on foot and in a different direction did not Preclude the possibility that these folks had picked up the robbery suspect and gone the other direction So judge Cogburn found that that factor was part of the calculus of reasonable suspicion And that's not a clearly erroneous finding of fact and that's not an inappropriate and legal conclusion. You agree with his conclusion There was a Terry stop. No We don't and we argued in the district court that it wasn't a seizure I Supposedly for us in the posture on appeal he made no findings of fact to support that or maybe Unfortunately, because then we could have findings the fact implicit in his conclusion Judge tracks are certainly there are but we don't know what they are I mean, yes implicit in that conclusion is the fact that some fact that Results in his finding that they were seized But we don't know whether he he made no finding the fact that any officer was standing immediately behind He made no finding a fact that the questioning was coercive He made I mean, I think that what what he determined was that this was an appropriate police citizen interaction and He went and said I think it's a Terry stop and then he decided that they found that there were factors facts that supported reasonable suspicion When we have a break-in in the area and a suspect on foot and we have two officers independently finding their behavior initially to be a little suspicious It's it's difficult for me to imagine what these officers should have done They they made the encounter as voluntary as they could given the fact that these folks had already stopped What why is that indication that they are free to leave Well, you're on a judge when only one of the officers actually walked up to the car and It's not that they there's no duty for a police officer to tell them they'd have to leave The question is whether a reasonable person in their circumstances would have felt free to leave and to conclude under these The they were parked off to the side about 20 feet away Visible Aspect of it from a reasonable perspective Right. It just seems to me that creates a situation that's questionable at least in terms of whether it was consensual Well, I guess my response to that would be if this encounter wasn't voluntary. It's difficult for me to imagine one that would be I In other words is at least in the context where you have a car that's parked Pardon me No, absolutely not because we went on the reasonable suspicion So we this court could hold that it's a Terry stop and hold that there were fact that the totality of the circumstances can you Know supported that brief seizure because it certainly was brief. Well, if we if we accept the district courts determination, there was a Terry stop Isn't an implication of that that at least for some period of time defendants were not free to leave Yes, at least that a reasonable person in their situation would not feel free to relieve. Yes, and I think the difficulties Let's just assume that that's we That that's a conclusion that the court comes to sure what we assume that So we're tell us where we go from there. Well from there we go to the question of whether a reasonable suspicion Supported that brief Terry stop and the factors that the government and that the district court has posited well Excuse me to be fair in the district court The government argued that there was no seizure and really didn't make an argument about reasonable suspicion but the district court found the factors of the break-in and then as you look at the totality the Circumstances from what in the light most favorable to the district courts decision those Circumstances support reasonable suspicion because the officers testified Excuse me that That they looked away in a way that wouldn't make sense It wasn't simply a Massenburg situation where they look down and sort of was avoiding a confrontation Here he was in a traffic context and it didn't make sense that he was looking away and that the other two were looking down as well, and that's a minor factor, but the bigger factor is They increased their speed they abruptly stopped they did a nosedive they stopped so quickly They whipped into this place that didn't appear to have any hope anyone home and the district court found that there were no cars Of course, there's a bus stop there. That doesn't mean it's not feasible that there could have been someone home But there was no evidence and indication that anyone was actually home. They whip into that that spot and at the same time The mr. Taylor's hands were out of the car hand was out of the car windows rolled down. It's a very cold day all of those factors at Support the district courts ultimate conclusion that there was at least reasonable suspicion that criminal activity might be afoot was As a result of this discussion at the car and initial discussion Was there any evidence of value to the prosecution obtained then other than the name? Mr. Taylor's name. No, that's that's evidence. We're talking about. It's good. That's right getting his name. That's right, and that happens Early, I mean, you know the officer skipper talks quickly it talks to the driver and Distinguishable from for example the Nathaniel black case they get the ID they hand it right back and it's not they really just one officer and there and then they he goes around after that encounter and they the Driver says sure you can and that's when he gets the name or he may have even gotten the name at the very beginning It really doesn't matter. I don't think in terms of the timing of it, but it was early in the encounter that he gets Mr. Taylor's name, which is all they needed Because then they compared they were able to find his old DNA from 2007 and compare it to the DNA found on the gun The defendant has raised two other issues the Batson challenge and the constructive possession instruction Miss Hester has not made any argument on those points If I think that our our brief probably is adequate unless your honors have questions about those two Issues the district court. I would note one thing about that though The district court did make a comparative juror or analysis, which I believe was on page 338 he notes that this particular juror was did seem more distracted and sort of He compares her situation to what he witnessed in the other jurors So he did make a comparative juror analysis to the extent that's necessary but more importantly he found that the reasons given by the prosecutor were Credible and then the court acted within its discretion in instructing on constructive possession under these circumstances Well, I think it was I think that it was more of an actual possession case I suppose because we had the DNA but at the same time we did not I don't know that I would characterize it as more Of one or the other we didn't have a direct evidence other than DNA. We didn't have him holding the gun We don't know how the gun got from the car to the street We presume that Mario Taylor threw it there given that his arm was out the window and the jury could presume that But there's been no case cited Right, I don't I don't know what I just said did I say find Infer thank you All I was going to say was that there's no case that I have found where a district court Where a conviction was reversed based on the giving of a constructive possession Instruction where there where it's not really clear. We don't have direct evidence of actual possession We do know that his DNA was on it. That's some evidence but without that it just made sense under these circumstances and at the very minimum, it wasn't reversible error because the the Prosecutor Well, I would say that if there's absolutely no if all we have is evidence for example one witness testifies I saw him holding the gun in That case it would be odd and perhaps error to instruct on constructive possession But if as in this case the defense counsel made the argument to the jury, there's no evidence of constructive possession So you don't really need to worry about that Probably would be harmless error and there's and I and I couldn't find a case where that was considered reversible error it's a correct statement of the law and Particularly under the circumstances back to support it Sure And this the facts in this case are we don't quite know how the gun got from the car to the street There's no evidence to support it You don't know if there is no evidence to explain it to support the charge Charge shouldn't have been given. No. Well, your honor. We do have evidence to support. We have his DNA on the gun All right, so we have evidence at some point on point He's touched the gun right, but we we don't know at that So we the argument would be he had dominion and control His his was the his DNA was on it and we have evidence that he Doesn't mean at the time of the stop the time was thrown out. He had dominion and control well, I think that it's it's a fair inference that he had possessed that gun and Sometime in the past and on that particular day with his hand out the window and it's being found right there right after he It is and I'm not constructive Fair enough, I don't think that the district court abused its discretion in instructing on constructive possession in this context Say well, it's not enough. Let's assume we say it's not enough for constructive position, but there is actual Aren't we making a Jury ought to make because a reasonable jury could say that's not actual possession. I Mean they didn't have that opportunity the only opportunity they had Was to make the determination of whether it is constructive possession that they had the opportunity to find actual possession instructed on actual possession Both instructions were given No, they didn't they found possession though and the fact supported the possession and so the court would have to hold that giving the cons, you know that that sort of adding to Giving a correct statement of the law is reversible error under the circumstances of this case where yes He instructed on constructive possession He also instructed at the request of Defense Council on the fact that mere touching is not enough to show possession And at the end of the day the jury found that there was possession And I think that it was not an abuse of discretion and certainly not reversible error under the facts of this case where we don't simply have one person saying or a set of witnesses saying he had his hands on that gun was it an either or Proposition on Or Either he actually possessed it or he constructed you could find possession in one of two ways It could either be actual possession or it could be constructive, you know The judge instructed in the alternative because that's the way that instruction is given and the but the Defense Council argued vigorously that there was no evidence of constructive possession and The Judicial Court said well in the circumstances of this case where we're not exactly sure how it got from one place to the next I'm gonna go ahead and give the constructive possession instruction and the government's main point is that's not reversible error particularly given the discretion of the district court If your honors have no further questions The government requests that this court affirm the judgment. Thank you. Thank you I'd like to start where you all left off with the constructive possession because the error here was was prejudicial as judge Traxler Points out there was no evidence of constructive possession There was some evidence of actual possession but as even the district court acknowledged it wasn't strong evidence of actual possession It was just the DNA and the DNA expert didn't even couldn't even testify that that meant he had touched the gun Jury was given a permission to make either determination as to whether it was actual or possession Actual or constructive possession and the government argued made an argument to the jury that it was constructive possession So constructive possession gives a jury Gives the government a less difficult burden to satisfy with proving I mean basically the the prosecutor argued she put the gun on the table and said, you know, the guns over there But I can still go get it. I've got constructive possession of that Comparing it to the gun over on the street You made the statement that the only evidence of actual possessions at the end of presence of DNA but I was trying to figure out and reading this while the window was down and I think the jury could take the view of the evidence that these defend this defendant Possibly seeing the officers turn around on him Through the gun out and has to worry about whether or not to go the officer saw his hand come out of the window That's true. I stand corrected with that. And then there is also evidence the Hands, right, but but still as the guy is the Right But that was in response to what he had been told about the DNA evidence by the police and that's what? the council argued at trial so as the district court acknowledged the evidence of Actual possession was not particularly strong and the government felt it was weak enough that it used the constructive possession Argument to the jury at trial and there's no way I mean it could have been just one juror That found constructive possession because they didn't have to specify which kind of possession that they found they didn't have to be unanimous The element was possession Could the jury have concluded that they could they could have nobody made that argument, but they could have concluded that I Knows what the jury does in the jury room when they're given a constructive Possession instruction they could they could have Well because they were instructed that the element they had to find was possession and that the possession could be constructive or actual So the jury doesn't have to agree about whether Possession was constructive or actual they just have to find possession under one of those theories So there's no way to know You know whether one or more jurors found possession by constructive possession rather than by actual possession No, I'm not saying that I'm just I'm just saying that You know any any one juror could have found constructive possession in this case and there's just no way to know but it is presidential because of the quantum of evidence and the fact that the government used it and its argument to try to Suppress an issue for a minute here the government kind of got the facts a little bit out of order when I was talking about What happened but the frisk of the men and the request to search happened only after? Skipper asked Taylor for his name that happened right at the beginning He approached the driver's side of the car asked what are you doing? Then he walked around and got Taylor's information before he asked for permission to search the car to frisk the men And Watson left the car only After Taylor's name had been obtained. So that's not a factor to consider determining whether Taylor was was Seized at the time that he gave his name I also point out with respect to reasonable suspicion the officers have to give factual underpinning for their reasonable suspicion And they never did that with they said that they were investigating a burglary But they never said that they suspected these men of participating in the burglary in it in any way And again with the windows down The government wants to say that that was reasonable suspicion But both windows were down and I'd also point out that officer Skipper said that after the frisk which happened before before the gun was found he says he had no reasonable suspicion that these men had done anything wrong and even in the light most favorable to the government that demonstrates that The officers didn't have any reasonable suspicion that something had been thrown out the window he's acknowledging that he did not You just can't take into consideration the fact that a gun was found after Taylor's name was obtained after he was seized Thank you The they pulled up to this house abruptly Go up and knock on a door was it ever established. They knew anybody at this residence That did not come out There's no evidence about about that at all But he did wait at the door for an answer and then went back to the car for 45 seconds before the officers approached But the officers never testified that they suspected that that's something that the district court Said but the officers never testified. We thought that they might be casing this house. They didn't say that They didn't even say that they thought that particular thing was suspicious Thank you working down a Greek Council and then going to the next case
judges: William B. Traxler Jr., G. Steven Agee, James A. Wynn Jr.